Beatty, C. J., concurring.
At the first presentation of this case, I was impressed with the conviction that very serious consequences must flow from any conclusion the court might reach, and have therefore given it the most careful and anxious consideration. It was apparent that so important a provision of the County Government Act as that which is in question here could not be held unconstitutional without producing disorder and confusion in the public business of a number of the most populous counties of the state, besides injuriously affecting the pecuniary interests of the deputy county officers, whose compensation it was intended to secure. It was therefore with great reluctance that I yielded to the conviction that, upon any construction of the proviso *608 under which the respondent claims, it could not be upheld without disregarding the manifest intention of the constitution. Actuated by the same feeling, I willingly united in the order for a rehearing, hoping that a fuller discussion of the case by additional counsel representing the state and the several counties affected by the decision might lead to the discovery of some happier solution of the difficulty.
I regret to say, however, that after carefully weighing and considering every argument that has been advanced from the beginning to the end of the discussion, the conflict between the act of the legislature and the constitution still seems to me plain and irreconcilable.
Unless by express words declared to be otherwise, every provision of our constitution is mandatory and prohibitory. (Art. I., sec. 22.) Among these mandatory and prohibitory provisions are found the following: Art. XI., sec. 5: “The legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office. It shall regulate the compensation of all such officers in proportion to duties, and for this purpose may classify the counties by population; and it shall provide for the strict accountability of county and township officers for all fees which may be collected by them, and for all public and municipal moneys which may be paid to them, or officially come into their possession.” Art. XI., sec. 9: “The compensation of any county, city, town, or municipal officer shall not be increased after his election, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed.”
It is not denied, and it cannot be, that by section 5 of this article the legislature is commanded to regulate the compensation of all county officers in proportion to duties. A comparison of sections 5 and 9 makes it equally *609 plain that such regulation must be made to take effect before the election of the officers whose compensation it controls, and that it cannot be subsequently changed so as to increase the compensation of any officer during the term "for which he has .been elected. It may be conceded that to regulate the compensation of an officer does not necessarily mean to ascertain or fix the exact amount which he is to receive for discharging all the duties of his office. Indeed, it seems plain to me that the legislature might have satisfied this requirement of our organic law without any classification of counties according to population, by the simple expedient of adopting a uniform fee bill, and allowing each county officer to retain for his compensation all the fees by him collected, - not exceeding a certain amount, and a percentage computed according to a sliding scale, such as that used in determining the compensation of executors and administrators, upon all higher amounts collected. This is one example of a regulation by which a just correspondence between the duties and compensation of county officers might be maintained without trenching upon the apparent design of the last clause of section 5, requiring provision to be made for the strict accountability of county and township officers for all fees by them collected, and without the necessity of dividing the counties into classes. No doubt other and perhaps better examples might be suggested of regulation by other means than the fixing of a definite sum to be paid to each officer for discharging all the duties of his office, and requiring him to provide all necessary deputies.
But the legislature has not seen fit to adopt a regulation of the character suggested. On the contrary, by the first County Government Act (Stats. 1883, p. 299), the duties of all county and township officers were prescribed by general provisions, and every county and township officer, except supervisors and judicial officers, was authorized to appoint as many deputies as might be necessary for the prompt and faithful discharge of the duties of his office. (Sec. 61, p. 316.) The act then *610 proceeded to classify the counties of the state by population, for the express purpose of regulating the compensation of the officers therein provided for. (Sec. 162, p. 332.) By the next section, section 163, the compensation of each officer in every class of counties except the first (the city and county of San Francisco alone constituted the first class and was left subject to the provisions of its old charter) was fixed at a certain sum of money (or sometimes certain fees), which, by a subsequent general provision (sec. 164, p. 361), was declared to be “in full compensation for all services of every kind and description rendered by the officers named in the act, their deputies and assistants.” To leave no doubt of the meaning of this clause, the act proceeds: “And all deputies employed shall be paid by their principals out of the salaries hereinbefore provided.” As an example of the provisions of section 163, we quote those relating to counties of the second class: —
“ Sec. 164. In counties of the second class, the county officers shall receive as compensation for the services required of them by law, or by virtue of their office, the following salaries, to wit: —
“ 1. The county clerk, thirteen thousand dollars per annum.
“2..The sheriff, fifteen thousand dollars per annum.
“3. The recorder, fifteen thousand dollars per annum.
“4. The auditor, two thousand dollars per annum.
“5. The treasurer, four thousand five hundred dollars per annum.
“ 6. The tax collector, eight thousand dollars per annum.
“ 7. The assessor, fourteen thousand dollars per annum.
“ 8. The district attorney, six thousand five hundred dollars per annum.
“9. The coroner, such fees as are now or hereafter may be allowed by law.
“10. The public administrator, such fees as are now or hereafter may be allowed by law.
*611 “ 11. The superintendent of schools, two thousand four hundred dollars per annum.
“ 12. The surveyor, such fees as are now or hereafter may be allowed by law.
“13. Justices of the peace, such fees as are now or hereafter may he allowed by law.
“ 14. Constables, such fees as are now or hereafter may be allowed by law.
“ 15. Supervisors, one thousand dollars each per annum.”
Now, conceding again that to regulate the compensation of officers does not necessarily mean to fix the exact amounts to be paid them for discharging all the duties of their offices, including the services of deputies, it cannot be denied that this is one method of regulation by which the requirement of the constitution is satisfied, without affirming that the County Government Act of 1883, and all subsequent acts on the same subject, were and are in this respect unconstitutional and void.
But the contrary has been decided in Langan v. Solano County, 65 Cal. 122, and no one here — least of all the respondent — is disputing the correctness of that decision. Assuming, then, what is conceded on all sides, that the act of 1883 did regulate the compensation of county officers according to duties, let us consider for a moment the nature of that regulation, and its effect in limiting the compensation proper of the officers themselves.
The sum allowed to any given officer being a lump sum out of which he must pay for the services of all deputies and assistants necessary for the prompt and faithful discharge of all the duties of the office, it is evident that his own compensation consists of the residue remaining after payment of such deputies and assistants; and it is equally evident that just so far as the county assumes the payment of such deputies and assistants, such residue is enlarged and the compensation increased.
The cases reviewed by the supreme court of Illinois in deciding Daggett v. Ford County, 99 Ill. 334, cover this *612 point very completely. By the constitution of Illinois, the duty of “fixing the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel, and other expenses,” is imposed upon the respective county boards, with the proviso that the compensation of no officer shall be increased or diminished during his term of office. It was shown in the opinion delivered in the case cited, that this clause of the Illinois constitution had been construed in a series of decisions, by which it had been held, among other things, that the county boards might either allow a lump sum to cover the compensation of the officer and his expenses for clerk hire, etc., or that they could allow a certain amount for his proper compensation, and a separate amount for his expenses; that if the latter method was pursued, he could retain out of the fees collected by him the amount of his fixed compensation, and also the actual amount of his expenses, and no more, provided they did not exceed the amount allowed; that if the board, after allowing a separate amount for expenses, found that it was insufficient, they could, from time to time during the term, increase such allowance, though they could not increase or diminish the certain sum fixed as the compensation of the officer. In other words, the supreme court recognized this distinction between' the allowance for compensation and for clerk hire, etc., when separately fixed: that the latter could, but the former could not, be increased or diminished during the officer's term. But when the board allowed a lump sum to cover compensation and expenses, so that the compensation proper consisted of the residue remaining over after payment of expenses, it was held that they could not, during the term of the officer, make any increased allowance, though convinced that their original estimate of expenses had been too low, nor could they require the officer to refund any part of the gross amount allowed, upon the ground that his actual expenses had fallen below the estimate upon which the gross allowance was based; and this for the reason that any increase or decrease of the gross *613 allowance necessarily increased, or diminished the compensation of the officer.
Here, then, is most respectable authority, if authority were needed, for the proposition that our legislature could not, either by direct enactment or by authorizing the boards of supervisors to so order, impose upon a county treasury the payment of the salary of any deputy of a county officer elected while the act of 1883 remained in force and unamended as to the provisions under discussion.
This being so, it remains to consider what changes have been made by amendments or additions to the original act. By the amendments of 1885, the sections of the act were renumbered, and salaries in some counties reduced, but no change was made that need be considered here. In 1887, however, the act was revised and re-enacted. In the revision, section 164 of the original act became section 211, and among other changes therein were the following: Instead of the words above quoted from section 164, section 211 was made to read as follows:—
“ Sec. 211. The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or ex officio officers, their deputies and assistants, unless in this act otherwise provided, and all deputies employed shall be paid by their principals out of the salaries hereinbefore provided, unless in this act otherwise provided; .... and provided further, that whenever, in the opinion of the board of supervisors, the salary of any county officer in the third, fourth, fifth, twelfth, thirteenth, fifteenth, twentieth, twenty-second, twenty-third, twenty-fourth, twenty-sixth, twenty-ninth, thirty-second, thirty-third, thirty-fourth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, and forty-first classes, as fixed and provided in this act, is insufficient to pay a reasonable compensation for the services required to be performed, the said board shall allow such officer a deputy, or such number of deputies as in their judgment may be required to do the busi *614 ness of such office, in connection with the principal, at a salary not to exceed one hundred dollars per month, to be paid at the times and in the manner that said principal is paid; provided, that an affidavit shall be filed by such officer with the said board, showing that such deputy,or deputies are required by him in the proper discharge of his duties as such officer.”
By their terms, these amendments (which I have put in Italics) were applicable to the county officers then in office, and who had been elected while the system of compensation established by the act of 1883 was in force, and (if so construed) were, for the reasons above given, clearly unconstitutional.
But the respondent’s case does not require such a construction, and he does not contend that said amendments went into operation until after the expiration of the term of the county officers in office at the date of their enactment.
His principal, Bonneau, was clerk of Marin County — a county of the twentieth class—when the act of 1887 was passed, and respondent was his deputy. But Bonneau was re-elected for a new term in November, 1888, and entered thereon January 7,1889. On January 10th, he filed the affidavit prescribed by the statute, showing that he required a deputy in his office, and on the same day the board of supervisors made an order allowing him such deputy at a salary of fifty dollars per month, to take effect from January 7th. In pursuance of this order, respondent was appointed, and having obtained a warrant for the amount of his salary for the month of January, presented it to the appellant, the county treasurer, who refused to pay it, on the ground that the proviso above quoted from the act of 1887 was unconstitutional, and the order of the board of supervisors therefore void. Thereupon this proceeding by mandamus was commenced for the purpose of enforcing payment. The learned judge of the superior court, in awarding a peremptory writ of mandamus, held, if he is correctly quoted in the respondent’s brief, that Bonneau, having been elected subsequent to the passage of the act *615 of 1887, went into office with “ a right to the amount of salary named in the statute, and a contingent right, dependent on the facts, to have additional clerical assistance.”
This being a fair statement of the proposition for which'1 the respondent contends, it becomes necessary to consider whether it will bear the test of a critical examination.
It is to be observed, in the first place, that it assumes a construction of the proviso which is more restricted than its terms, and more restricted than its application in this case, viz., that it was intended to apply only when, from change of conditions, an officer might require additional clerical assistance, meaning, as I understand the expression, clerical assistance in addition to that which was required at the date of the passage of the act. If this is the construction placed upon the proviso by the superior court, it must be admitted that it is not very fully borne out by the terms of the statute. The act says nothing about change of conditions through increase of population, or from any other cause. No facts are enumerated upon which the action of the board is made to depend. The only condition is, that the officer shall file an affidavit showing that for the proper discharge of his duties he requires the assistance of a deputy or deputies, which, it is apparent, might be the case in a county in which the conditions were unchanged, or where the change of conditions had resulted in lightening the duties of the office. Nor does the statute require the board of supervisors to find that the duties of the office have become more onerous since the passage of the act. All they have to do is to reach the conclusion, in the exercise of their own discretion, that the salary as fixed and provided in the act is insufficient to pay a reasonable compensation for the services, required to be performed, and if they are of that opinion, they shall allow such officer not “additional clerical assistance,” but “ a deputy, or such number of deputies as in their judgment may be required to do the business of such office, in *616 connection with the principal,” with salaries payable out of the county treasury.
Giving to this language its literal and obvious construction, the working of the law may be fairly illustrated by applying it to counties of the second class, which, by the amendments of 1889, were brought within its operation.
Referring to a clause of the statute above quoted, it will be seen that the compensation allowed to the different officers of this class of counties is fixed upon a scale which clearly indicates that it was intended to cover the salaries of a number of deputies in each of the principal offices. The clerk, for instance, has thirteen thousand dollars, the sheriff fifteen thousand dollars, and so on. Row let it be supposed that the legislature intended the clerk to have for his proper compensation the' sum of three thousand dollars (which is equal to the maximum allowed by the constitution to the state treasurer, secretary of state, controller, and other state officers), and that the remaining ten thousand dollars was allowed for his necessary deputies, say six in number. This is the condition of things when the law is passed and when the clerk is elected. On assuming the office, he can truthfully swear, although the conditions are entirely unchanged, that he requires the assistance of six deputies for the proper discharge of the duties of his office, and he files an affidavit to that effect. Thereupon it becomes the duty of the board of supervisors to consider whether his salary, as fixed and provided in the act, is sufficient to pay a reasonable compensation for the services of the clerk and six deputies; and if they happen to be of the opinion that three thousand dollars is not a reasonable compensation for the clerk, or that ten thousand dollars is not sufficient for the compensation of the six deputies, they must make an order allowing the clerk to appoint, not additional deputies, but as many deputies as he requires in connection with himself to perform the duties of the office, and order their salaries paid out of the county treasury.
*617 This result of a literal construction of the law is so flagrantly absurd, when applied to counties of the second class, that it must be rejected in favor of one more reasonable, though certainly less consonant with the terms of the statute. And it may be conceded that the most reasonable construction that can be given to this proviso is that indicated in the foregoing extract from the opinion of the judge of the superior court. It seems to me, however, that although the law may have been construed by him according to the actual intention of the legislature, it was applied in this case in its literal sense, for the respondent was Bonneau’s sole deputy when the law was passed, and when he was last elected. It was not shown that an additional deputy was required, and in fact none was required. Respondent continued after the order of the board and his new appointment'to be, as he had been before, the sole deputy in the office, and what was in fact done in Marin County by its clerk and supervisors was precisely what I have supposed done in attempting to illustrate the working of the law according to its express terms in a county of the second class. If, therefore, the order under which the respondent claims can be upheld, all the proceedings above supposed to have taken place in a county of the second class would be entirely legitimate and proper.
In making this statement, I have not overlooked the fact, which appears in the evidence, though not in the findings or decision of the court, that the business of the clerk of Marin County did increase after the passage of the act of 1887 so much that the respondent, who had before given but a part of his time to his duties as deputy clerk at a small salary, was subsequently compelled to devote his whole time to the duties of the office, and necessarily earned and received a larger salary. If this fact —testified to, but not found — is to be considered as bringing the respondent’s case within his construction of the law, it will be necessary to bring the law so construed to the test of the constitution.
According to this construction, the legislature, after *618 dividing the counties of the state into forty-eight classes for the express purpose of regulating the compensation of the county officers, and having regulated such compensation by the system of allowing to each officer a certain fixed sum, or certain fees out of which he must pay the salaries of all necessary deputies and assistants, has proceeded to ingraft upon this system a proviso applicable to twenty classes, to the effect that the supervisors may, after the election of any officer, if they think the compensation allowed him by the act in force at the date of his election is insufficient, pay out of the county treasury the expense of employing any deputies he may require in addition to those required at the date of the passage of the act.
Assuming this to be the true meaning of the proviso, it either is or is not a mode of regulating the compensation of the officers of the selected classes of counties. If it is a mode of regulation, how does it regulate, and through whose agency? Clearly, it seems to me, through the agency and subject to the discretion of the board of supervisors. If, under the law in force at the date of his election, an officer is to receive for his proper compensation one sum (viz., what is left of his fixed salary after paying his necessary deputies), and under the order of the board, made after his election, a larger sum (viz., what is left of his fixed salary after paying, at most, only a part of his necessary deputies), it is the discretion of the board, and not that of the legislature, which fixes the amount, and such amount, instead of being fixed in advance of his election, can only be fixed after his election; for, by the terms of the proviso, the affidavit of the officer is a necessary preliminary to the order of the board. Passing over this last objection, which, in view of the evident purpose of sections 5 and 9 of article XI., is serious enough, let us consider only the first.
For myself, I am far from believing that the plan of regulating the salaries of local officers by local boards is a bad one. On the contrary, I think the best plan would *619 be to leave such matters to the control of those who are most directly interested, and most capable of deciding for the best. But it is very certain that the framers of our constitution distinctly intended to give this power to the legislature, to the exclusion of the boards of supervisors. This is not only evident from the language of section 5 of article XI., but is shown by the debates of the convention. When this article was reported to the convention, Mr. Webster, of Alameda, offered an amendment to section 5, providing, in effect, that the respective boards of supervisors should regulate the compensation of other county officers. After a short debate, in which the only argument against the amendment consisted of a statement of the supposed mischiefs involved in conferring such a power upon local boards, the amendment was voted down, and the section adopted substantially as reported. (Debates of Constitution, 1048, 1049.) The framers of the constitution having thus deliberately rejected the proposition to invest the board of supervisors with discretionary authority in this particular, and having committed the whole matter to the discretion of the legislature, under a mandatory injunction to exercise the power by regulating in advance the compensation of all officers according to their duties, it is clear that the legislature cannot delegate such power to the supervisors, to be exercised according to their discretion.
But counsel for respondent seek to avoid the force of this argument, by insisting that the proviso in question, according to their construction of it, does not in any way regulate or affect the compensation of the county officers. They make a distinction between the compensation of the officer and the expenses of his office, and contend that the County Government Act itself fixes the compensation of the officers beyond the power of the board of supervisors to change or alter it, and that the proviso merely gives the board power to allow and pay the expenses of the office occasioned by changed conditions and unforeseen contingencies. I understand this *620 to be the position to which the respondent commits himself, and upon which he feels most confident of sustaining the judgment in his favor.
In view of the foregoing discussion, it would seem rather difficult to maintain that the proviso in question does not affect and was not intended to regulate the compensation of county officers; but conceding for the moment that the respondent is right in his construction of it, what is the result? The result is, that we have an act in direct conflict with various provisions of the con. stitution prohibitory of local and special legislation. •
If there is any one feature of the constitution more marked, any characteristic more pervasive than all others, it is this oft-reiterated, this general and specific inhibition of local and special laws. I cite the following clauses as bearing more directly upon the matter under discussion: —
Art. I., sec. 11: “All laws of a general nature shall have a uniform operation.”
Art. IV., sec. 25: “The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: .... 9. Regulating county and township business, or the election of county and township officers; .... 33. In all other cases where a general law can be made applicable.”
Now, this law, which for the present we assume has nothing to do with the compensation of county officers, but merely empowers the boards of supervisors to allow and pay the expenses caused by changed conditions and unforeseen contingencies, is certainly a law of a general nature, relating as it does to a matter of equal interest to every part of the state. It ought, therefore, to have a uniform operation throughout the state, instead of being confined to less than half of the counties. But passing over this objection to the law, as one founded upon a disputed, and perhaps doubtful, construction of section 11, article I., it seems clear that this proviso is in direct conflict with the ninth and thirty-third subdivisions of section 25 of article IV., for certainly it is a regula *621 tion of county business, and the case not only admits, it demands, the application of a general law.
But this law is local and special. It selects certain classes of counties, apparently at random, some large, some small, some of intermediate size, omitting others of every grade of population, above, below, and intermediate, and confers upon the classes so arbitrarily selected a power and a privilege in the transaction of the county business which is denied to others standing in precisely the same relation to the subject of the enactment. The fact that it is made applicable to classes of counties created in pursuance of authority expressly conferred by the constitution itself, viz., the authority to classify counties by population for the purpose of regulating the compensation of county officers, does not make it a general law; for on the construction which is here assumed, it is not a regulation of the compensation of officers, but a provision for contingent expenses; and a classification permitted for one kind of legislation cannot be.made the basis of a different kind of legislation to which it is manifestly inappropriate. It is this consideration which distinguishes this case from Cody v. Murphey, 89 Cal. 522, and People v. Henshaw, 76 Cal. 444. In the first-mentioned case, an act was upheld, although it applied to but one class of counties, but it was an act to regulate the compensation of the county officers. In the Henshaw case, the act upheld affected only one class of cities, but it was an act relating to municipal organization, for which purpose the constitution expressly authorizes the classification of cities and towns in proportion to population. (Art. XI., sec. 6.)
The case of Miller v. Kister, 68 Cal. 142, on the other hand, holds that the classification of counties established by the act of 1883, for a legitimate purpose, cannot be made the basis of discriminating legislation, even when it relates to the compensation of county officers.
The case of Ex parte Westerfield, 55 Cal. 550, 36 Am. Rep. 47, is also directly in point on the proposition that a law is not general merely because it applies equally *622 to all of a class arbitrarily defined. As Mr. Justice Mc-Kinstry says in that case: “A general law must be as broad as its object.” Therefore a law the object of which is to provide for the payment of county expenses arising from unforeseen contingencies must be as broad as the state, for it is absurd to say that unforeseen contingencies will happen in some counties but not in others.
In the case of Pasadena v. Stimson, 91 Cal. 238, a law applying to two classes of municipal corporations was held unconstitutional, because it related to a subject foreign to the purpose for which the classification of such corporations is authorized, and the discussion on this point was summed up in the following words: “The conclusion is, that although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.” (Pages 251, 252.)
In view of these decisions, the conclusion cannot be avoided that the proviso, construed as something distinct from a regulation of the compensation of county officers, is local and special legislation, and therefore void. And this vice of the statute in question distinguishes it broadly from the law which was sustained in Kirkwood v. Soto, 87 Cal. 394, upon which the respondent so confidently relies. That was a general law allowing superintendents of schools in every county in the state certain necessary official expenses, and was in this respect similar to many general provisions of the codes allowing for extraordinary expenses of county offices, such, for instance, as the preparation of a new great register (Pol. Code, sec. 1113), to which I see no constitutional objection.
If I am correct in the views above expressed, the pro *623 viso in question is void as special legislation, even if construed according to respondent’s contention, that it does not affect the compensation of county officers. But although I have for the moment conceded the correctness of his position as to this point, I do not think it can be maintained. The proviso, in my opinion, is an attempt to regulate such compensation by committing to the discretion of the supervisors a duty which the constitution had confided to the legislature exclusively,— a duty which, under the terms of the act, the supervisors cannot perform until after the election of the officers to be affected, -whereas the constitution requires it to be performed by the legislature in advance of their election.
For these reasons, I concur in the judgment of reversal.